IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          :
                                                :
MANUEL ENRIQUE NET VELAZQUEZ                    :        Case No. 05-13056(ESL)
                                                :        Chapter 7
    Debtor                    :
                                                :
_____        :
                                                :
NOREEN WISCOVITCH RENTAS                        :
CHAPTER 7 TRUSTEE                               :        Adv. Proc. No. 06-00184
                                                :
    Plaintiff                 :
                                                :
vs.                                             :
                                                :
BANCO BILBAO VIZCAYA                            :
ARGENTARIA DE PUERTO RICO                       :
                                                :
    Defendant                 :
_____        :

## OPINION AND ORDER

Before the court is an action to avoid a preferential transfer pursuant to 11 U.S.C. § 547(b) filed by Noreen Wiscovitch Rentas acting as the Chapter 7 Trustee (the "Trustee") on behalf of the estate of Manuel Enrique Net Velazquez ("Debtor") against Banco Bilbao Vizcaya Argentaria de Puerto Rico (the "Bank"). The issue before the court is the "ownership" of the proceeds from the sale of certain real property (the "funds") that were deposited by the Debtor into an account (the "account") held by one of Debtor's companies named Code Inspectors & Management Corp. ("Code Inspectors" or the "company") at Doral Bank ("Doral"). The funds were attached within the 90-day preference reachback described in 11 U.S.C. § 547(b) by the Bank, a creditor with a lien over the Debtor's real property that was the source of the funds.

The Bank claims that the attached funds do not belong to Debtor; the Trustee claims that they do. Resolution of the ownership issue will determine if the funds are an "interest of the

debtor" in property under section 547(b) that must be returned to the Debtor's bankruptcy estate for distribution to creditors.[1]

For the reasons discussed below, we conclude that the Debtor owns the funds and are thus property of the estate.[2] The facts and the evidence show that the funds attached from the account were deposited by the Debtor for his exclusive benefit and that he retained control and dominion over the funds. Although the company is separate legal entity under Puerto Rico law, the evidence shows that it is a dormant paper company and that Debtor's sole purpose was to hold the funds in the Doral account until he could reorganize his affairs and start some other line of work. There is no evidence that the Debtor negotiated the check to the company or that he received anything from the company in exchange for the deposit. There is no evidence that the company was operating or otherwise had control over the funds. Thus, the funds belong to Debtor and are an interest of the Debtor in property. Consequently, the attachment of the funds by the Bank executed within the 90-day reachback period constitutes a preferential transfer and is subject to avoidance under § 547(b).

*Facts and procedural background*

Debtor filed a Chapter 7 petition on December 13, 2005. The Trustee filed the instant adversary proceeding on September 18, 2006 against the Bank, to avoid a preferential transfer under 11 U.S.C. § 547. The Bank filed a motion for summary judgment and memoranda in support on October 24, 2006. (Dkt. 11-13).[3] The Trustee opposed the motion for summary

---

[1] Except for the "interest of debtor in property" element, there is no dispute that this case facially satisfies the other elements of a § 547(b) preference action, discussed, *infra*.

[2] For ease of reference and because Debtor represented that all of the disputed funds will enter his bankruptcy estate, the issue will be addressed as if no part of the funds belong to the Debtor's wife, who is not a debtor in this case.

[3] References to the record shall be to "Dkt. __."

- 2 -

judgment and moved for judgment on the pleadings. (Dkt. 14). The court denied the competing

motions by order entered on April 23, 2007, in view of the unresolved issues concerning

ownership of the funds. (Dkt. 21, the "Order"). In the Order, the court set forth the facts of the

case up to that point of the proceeding as follows (Dkt. 21 Order, at 2-3):

> The uncontested facts of the case are as follows. On June 3, 2005 the Defendant filed with the Registry of Property a Judicial Writ regarding a collection of monies action, issued by the Superior Court of Puerto Rico in the case of Banco Bilbao Vizcaya Argentaria Puerto Rico v. Ten General Contractors, S.E., Manuel Enrique Net Velazquez, Migdalia Ferrer Montijo and their conjugal partnership, Case No. KCD2004-0041, ordering the attachment of the property located at Paseo de la Fuente, A-1 and A-2, belonging to Mr. Net and his wife, in the amount of $300,000. Defendant submitted an August 28, 2006 title study containing this information. The same title study reflects that on August 31, 2005 the referred property in Paseo de la Fuente was sold to Mr. Florencio Berrios Castrodad and his wife. According to the Plaintiff, the financial institution that financed the purchase of the property was the Defendant herein; Banco Bilbao Vizcaya Argentaria Puerto Rico. Defendant has not contested this factual allegation.
>
> Upon the sale of the real property in Paseo de la Fuente, the Defendant did not receive payment for its lien, instead Mr. Net and his wife received a check in the amount of $354,373.30. Defendant states that the funds delivered to debtor upon the sale of the property "were earmarked" to be delivered to the Defendant to pay the attachment, while sustaining that "said funds never belonged to the debtor." Defendant's Memorandum of Law in Support of the Motion for Summary Judgment, Docket No. 13, page 5. However, the monies were deposited in the account number 1840005324 with Doral Bank, in the name of Code Inspectors & Management Corp. ("Code Inspectors"). According to a Certificate of Corporate Resolution dated September 6, 2005, submitted by the Defendant, Mr. Net was the president of Code Inspectors and Ms. Ferrer, his wife, was the secretary, at that time. The Defendant attached the funds deposited in the Code Inspectors bank account on September 15, 2005.
>
> On December 13, 2005 Mr. Net Velazquez filed a petition under Chapter 7 of the Bankruptcy Code. Ms. Noreen Wiscovitch was appointed the Chapter 7 trustee and on September 18, 2006 she filed the present adversary proceeding as trustee for the estate of Mr. Net, to recover the alleged preferential transfer made to the Defendant upon the attachment of the funds deposited in the account of Code Inspectors.

The matter was set for trial. The following are the relevant undisputed facts gleaned from

the Preliminary Pretrial Report filed by the parties on October 30, 2007 (Dkt. 41, "Report"):

1) in June 2004, the Bank sued the Debtor and others in a state court collection of money action (Dkt. 41 at 4-5);

2) on June 3, 2005, the Bank filed with the Registry of Property an attachment

- 3 -

encumbering Debtor's real property located in Paseo de la Fuente in Cupey, Puerto Rico (Id. at 12, ¶ 1);

3) On August 31, 2005, the Debtor and his wife sold the attached property to certain persons not parties to this proceeding (Id. at 13, ¶ 7);

4) the Bank financed the sale transaction and gave the proceeds therefrom to Debtor in the form of a manager's check in the amount of $354,373.30; (Id. ¶ 8);

5) the $354,373.30 were deposited in account # 1840005324 at Doral Bank held in the name of Code Inspectors & Management Corp ("Code Inspectors") (Id. ¶ 9)[4];

6) the Debtor listed the Code Inspectors' account in his schedules (Id. ¶ 10);

7) on September 15, 2005, 90 days prior to the filing of the petition, the Bank attached the $351,383.10 available in Code Inspector's Doral Bank account (Id. ¶ 11);

8) Code Inspectors does not owe any money to the Bank (Id. ¶ 12).

A trial on the issue of ownership of the funds was held on May 12, 2008. (Dkt. 67, "Transcript"). At trial, the court expanded the foregoing list of undisputed facts by adding the following factual findings (Id. at 38):

9) the Debtor was aware of the attachment at the closing of the sale of the Paseo de la Fuente property;

10) the funds from the sale were not used to satisfy the attachment;

11) the Debtor considered the check (the proceeds from the sale) to be his own;

12) the Debtor deposited the check in the account of Code Inspectors;

13) Code Inspectors was incorporated several months before the deposit was made; and

14) the funds were deposited in Code Inspectors' account in order for Debtor to operate.

At the end of the trial, the court stated that the "ultimate legal question" in this case is

---

[4] Code Inspectors was formed in December 2004; Debtor and his wife are the sole shareholders and officers of the corporation and have authority to manage the Doral account. (Dkt. 12 Exh. B at 7). Code Inspector's Doral account was apparently opened on September 6, 2006 with a total initial deposit of $376,898. (Dkt. 12 Exh. A-B at 3-6).

whether by the act of depositing the funds in Code Inspectors' account, the Debtor lost ownership

of the funds. (Dkt. 67, Transcript at 40:4-7). The parties were ordered to brief the ownership

issue; memoranda of law were filed by the Bank and the Trustee shortly thereafter. (Dkt. 68

"Bank's Memo"; Dkt. 71 "Trustee's Reply").

*Discussion*

The parties did not explain the elements of a transfer that would effectively invest a

transferee with dominion and control over the funds so as to assert ownership of the same.

"Dominion" and/or "control" are the essential badges of ownership conferring an "interest in

property" under applicable bankruptcy and non-bankruptcy law.

*Elements of a preference claim under section 547(b)*

Section 547(b) provides:

Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property-

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made-

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if-

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and
such creditor received payment of such debt to the extent provided by the provisions of this title.

Except for the "interest of the debtor in property" requirement, the other elements

necessary to make out a *prima facie* preference claim under section 547(b) are present in this

case. First, it is settled law that a judicial attachment constitutes a "transfer" as defined in section

-5-

101(54) of the Code. *See, In re Pysz*, 2008 WL 2001735, *2 (Bkrtcy.D.N.H. 2008) (slip copy) (attachments constitute "transfers" of property interests under the Code). It is undisputed that the attachment of the funds was on account of antecedent debt owing to the Bank. Therefore, the Debtor's "debt" to the Bank constitutes a "claim" by the Bank making it a "creditor" of the Debtor as defined in section 101(5, 10, & 12) of the Code. The attachment took place within the 90-day reachback period provided in the statute. For purposes of a preference claim, there is a rebuttable statutory presumption that the Debtor was insolvent on and during the 90 days immediately preceding the filing of the petition. *Id.*, citing § 547(f). If the Bank retains the funds, it would receive more than it would receive in a liquidation.[5] Consequently, if the Debtor proves he is the legal or equitable owner or beneficiary of the funds such that these are in "interest of the debtor in property", then the Bank's attachment constitutes an avoidable preference as a matter of law. *See In re E-Z Serve Convenience Stores, Inc.*, 377 B.R. 491, 496-97 (Bkrtcy.M.D.N.C. 2007) (whether or not each element of a preference claim is established is a question of law). The Trustee bears the burden of establishing each element of the preference claim. *Id.* at 496, citing 11 U.S.C. § 547(g).

*The law of ownership*

The black-letter law on ownership is that "an owner is one who has dominion over property which is the subject of ownership". 73 C.J.S. Property § 40 (Thompson Reuters/West 2008). The term "owner" generally has no definite legal meaning and is to be applied differently according to the circumstances. *Id.* The right to control property is an incident of ownership and in general, one who freely disposes of property without reservation cannot subsequently exercise

---

[5] The Bank seized over $351 thousand from the Doral account, whereas the Bank's lien over the Debtor's real property was for $300,000. (Dkt. 21 Order at 2:1-25 - 3:1-14).

control over the same. *Id.* at § 45.

The governing principles of property ownership under Puerto Rico law are in accordance with the foregoing general statements of the law. Section 280 of the Puerto Rico Civil Code, 31 L.P.R.A. § 1111 (the "Civil Code") defines "ownership" as "the right by which a thing belongs to some one in particular; to the exclusion of all other persons." Puerto Rico law grants persons the right of reclamation of property. The party reclaiming property as his own bears the burden to establish ownership over the disputed property by showing that he alone has the right of dominion over a clearly identifiable thing that is being unlawfully possessed by the defendant. *See* Civil Code § 1111 *Annotations*, citing, e.g., *Amy v. Amy*, 15 P.R.Dec. 387 (1909); *Perez Cruz v. Fernandez*, 101 P.R.Dec. 365 (1973). "According to well-known civil law principles, the ownership of a thing always rests with the person who has immediate dominion of the same, regardless of whether another person uses or enjoys the said thing in any manner." *Nieves Velez v. Basander Leasing Corp., et al*, 1994 WL 909627 at p. 5 (publication pages not available) (P.R. 1994), citing Civil Code § 283 (31 L.P.R.A. § 1114). As such, the funds belong to the person with immediate or proximate dominion of the account. *Id.*, citing *Banco Territorial y Agricola v. Arvelo*, 7 P.R.Dec. 551 (1904).

The parties agree that Code Inspectors is a closely-held corporation legally existing under the laws of Puerto Rico, and that a corporation is a "person" under the law with separate rights and responsibilities and the capacity to own property and to sue and be sued. (Bank's Memo Dkt. 68; Trustee's Reply Dkt. 71 at 3 ¶ 7); *see also* 14 L.P.R.A. § 2601 et seq [Puerto Rico General Corporation Law of 1995]; *Moline Props., Inc. v. Commissioner*, 319 U.S. 436, 439 (1943) (a corporation is an entity separate from its shareholders). While each party alleges a different legal result, both concede that Debtor opened the Doral account in Code Inspectors' name and

-7-

deposited the funds in that account. Consequently, our inquiry focuses on whether the deposit transferred ownership of the funds from the Debtor to the company. We find that it did not.

As a general proposition, "[t]he law presumes that ownership lies with the person in possession of property or money." *Citadel Management, Inc. v. Telesis Trust, Inc.*, 123 F.Supp.2d 133, 150 (S.D.N.Y. 2000), citing *Northern Pac. R.R. Co. v. Lewis*, 162 U.S. 366, 372, 16 S.Ct. 831, 40 L.Ed. 1002 (1896) ("possession is prima facie evidence of some kind of rightful ownership or title".); *United States v. Wright,* 610 F.2d 930, 939 (D.C.Cir.1979). "Whether this presumption holds depends in part on the nature of the transaction that led to possession." *Citadel, supra* at 150. The presumption may hold if there is evidence that Debtor transferred the funds "for the benefit of [Code Inspectors], free and clear of all liens, interests, charges and encumbrances, [such that the company would have been] free to treat the funds as it wished." *Id.* In this case, there is no evidence of a "free and clear" transfer of possession from Debtor to the company, or of an intent to part with ownership of the funds in favor of that company. The "nature of the transaction" was that of a mere gratuitous "deposit" by the Debtor of the funds into the account, for his benefit and not in consideration of anything received from the company. (Dkt. 67 Transcript at 9:25 - 10:1-4). Based on these facts, the deposit of the funds into the account did not invest the company with any legal or equitable interest in the same; the company had mere naked possession of the funds and nothing else. Furthermore, as discussed *supra*, Puerto Rico law recognizes that a party may reclaim property as his won and may establish ownership of it despite the property being in the hands of another party.

In this case, the Debtor, through the Trustee's preference action, is asserting ownership of the funds attached by the Bank while in the hands of a third party–Code Inspectors; attached in the mistaken belief that they belonged to the Debtor. The Debtor also had dominion over the

account with the power to use and dispose of the funds. The Debtor testified that he deposited the funds in the Code Inspectors account "for the intention that try (sic) to begin work in another company, because I have to continue with my life[,]" and he did not acquire any shares in exchange for the funds. (Dkt. 67 Transcript at 9:22-24; 10:2-4). From this we conclude that Debtor never intended to make a capital contribution to Code Inspectors. Also, the Debtor rejected the possibility that he made or intended to make a loan to the company. (Id. at 13:20-22). A loan would have given rise to an irrebutable presumption of ownership in favor of Code Inspectors. *Citadel, supra* at 150 (once loaned funds are transferred to the borrower, ownership transfers with it). But the Debtor denied making a loan and his testimony stands unrebutted, whereas the Bank testified that "at the moment we ordered the attachment [of the Doral account] we thought that the money was in his [Manuel Net's] name." (Dkt. 67 Transcript at 35:23-24). Thus, the Bank was always convinced that the funds belonged to Debtor, otherwise it would not have ordered the attachment. (Id. at 34-35). The evidence shows that the Debtor and the Bank agreed in their belief that the attached funds belonged to Debtor.

The Debtor testified that he merely kept the money in the company's account that he and his wife owned while he reorganized his affairs and began work with "another company". (Id. at 9:17-25 - 10:1-20). It seems reasonable to infer that "another company" excludes Code Inspectors, otherwise, the Debtor could have simply referred to that company. Furthermore, Debtor listed the account as part of his bankruptcy estate, convinced that the funds belong to him and thus, are part of the estate to be distributed to creditors in this case. (Id. at 10-12). This, too, undermines any notion that Debtor made a capital investment in the company, or a loan, as the

Bank implies. (Dkt. 68).[6] The Bank did not provide or elicit evidence to suggest that the company exercised autonomy over the use or disposition of the funds. "This sort of autonomy over property is one of the classic indicia of ownership." *Citadel, supra* at 150 (citation omitted). In summary, the Bank did not rebut the Debtor's testimony that he owned the funds at all times by producing contrary evidence establishing that Code Inspectors had autonomous control of the funds. Applying the law to the facts and the evidence, it becomes clear that the funds constitute an "interest of the debtor in property" the transfer of which can be avoided.[7]

As to the typical indicia of ownership under the Civil Code, "[d]ominion includes the right of the owner to benefit from the thing that belongs to him by obtaining the fruits or yield of the same. It also includes the right of the owner to carry out legal acts to dispose of the thing, alienating it or subjecting it to liens or restrictions. *Nieves Velez, supra* at 5, citing Civil Code § 280 (31 L.P.R.A. § 1111) (other citations omitted), *Cf. WAPA TV Broadcasting Co. v. Secretary of Treasury*, 5 PR Offic Trans 1134, 105 P.R.R. 816 (1977) (the modern civil law concept of ownership is no longer rigidly wrapped around the power of alienation codified in Civil Code § 280, but instead includes the broadest possible control or power over a tangible thing; control which is autonomous in character, perpetual in principle, elastic in nature and of a partially

---

[6] There is no evidence of a contractual agreement (i.e., a loan, a capital investment, a purchase of shares) between the Debtor and his company whereby the Debtor received any consideration from the company in exchange for depositing the funds in the Doral account. This was a gratuitous deposit.

[7] The Code does not define the phrase "interest of the debtor in property" but it is best understood as "that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *In re Beacon Vision, Inc* ., 340 B.R. 674, 677 (Bkrtcy.D.N.H. 2006) quoting *Begier v. IRS*, 496 U.S. 53, 58 (1990) (the scope of "interest of debtor in property" must be read coextensively with section 541 "property of the estate"); *accord, Criswell v. Hensley*, 102 F.3d 1411, 1418 (5th Cir. 1997) ("interest of the debtor in property" encompasses the "all legal or equitable interests" standard under section 541). Under Puerto Rico law, an "interest in property" is defined as "a real right in movable or immovable property". 19 L.P.R.A. § 456(b).

discriminable content). There is no evidence that Code Inspectors exercised dominion over the funds, or autonomously dealt with the funds or otherwise controlled the funds at any time. The Debtor, on the other hand, maintains his right to use and control the funds at will and listed the funds as part of his bankruptcy estate. Through this evidence and testimony the Debtor met his burden of establishing ownership of the funds to the exclusion of anyone else–which the Bank failed to rebut.[8]

The reason that the company did not acquire any right or interest in the check (or the funds) is that under the Law of Negotiable Instruments of the Commonwealth of Puerto Rico, 19 L.P.R.A. § 401 et seq, a "check" is a "draft" containing an unconditional "order" to pay and is a "negotiable instrument". 19 L.P.R.A. § 504(a-f). Normally, when possession of a check is voluntarily surrendered to another party, "delivery" has occurred either as a "transfer" or as a "negotiation" and this exchange bestows rights in the transferee as a "holder" or as a "holder in due course" of the check and the proceeds it represents. *Id.* §§ 451(14, 20), 551(a, b) & 553. A "holder in due course" is essentially a party who takes the instrument "for value" and without notice of adverse claims to the instrument. *Id.* § 602. With this basic framework in mind, the Bank's disclaimer of liability is untenable under Code section 550(a).

The evidence makes clear that the Debtor never "transferred" or "negotiated" the check to the company; nor did Debtor "specially indorse" the check by making it payable to the company. 19 L.P.R.A. §§ 555(a), 601. Therefore the company never acquired any rights to the check or its proceeds as either a holder or as a holder in due course, because there is no evidence that the company itself sought to enforce the check or that it gave Debtor anything of value for it. The

---

[8] Taken as a whole, the Bank's evidence merely established that it made an oversight mistake when it gave Debtor the $354,373.30 check without corroborating whether it had a lien against the proceeds of the check. (Dkt. 67 Transcript at 25-26; 30-33).

- 11 -

Debtor merely cashed the check by simultaneously depositing it in the company's account.

In synthesis, because the Debtor never transferred or negotiated the check to the company, the company never acquired an "interest in property" in the form of a "real right" to claim a legal or equitable interest in the funds under state law. 19 L.P.R.A. § 456(b).

Thus, under the Code, the company was a mere "conduit" for the funds in a "one step" (attachment) transaction between the Debtor and the Bank and did not have any rights in, or control and dominion of the check or the funds. As a result, the company cannot be liable in a preference claim because it never became an initial "transferee" of the funds under the Code by virtue of a transfer or negotiation under applicable non-bankruptcy law. *See, In re Anton Knoll,* 277 B.R. 875, 880 (1st Cir. BAP 2002) (applying state law of negotiable instruments in preference action, adopting the "dominion and control" test to assign transferee liability under section 550(a) and differentiating "dominion and control" test from the mere "conduit" test) (citations omitted); *see also, Criswell v. Hensley (In re Criswell)*, 102 F.3d 1411 (5th Cir. 1997) (differentiating the "dominion and control" and "conduit" cases of transferee liability and imposing initial transferee liability on a judgment creditor that attached a debtor's property found in the hands of a third party to whom the debtor had transferred the property in trust) (citations omitted); *In re Reeves*, 65 F.3d 670, 675-76 (8th Cir. 1995) (applying the dominion and control test to hold that a closed corporation controlled by the debtor was a mere "conduit" and not liable as an initial transferee under section 550(a) for funds that the debtor deposited in the company's account, which the debtor then transferred to other parties).

Finally, the Bank claims that the funds were "earmarked" for its benefit and were never meant to be transferred to the Debtor. (Dkt. 41 Report at 10; Dkt. 13 at 3-4). However, the unrestricted transfer of the check for $354,373.30 from the Bank to Debtor vested the Debtor

- 12 -

with the dominion, autonomy and control necessary to claim ownership of the funds under Puerto Rico law. 31 L.P.R.A. §§ 1111, 1114; *Nieves Velez, supra*; *WAPA TV, supra*. Once the Debtor walked away with the check, he acquired the power to dispose of its proceeds and designate payees freely and without seeking any input from the Bank or anyone else.[9] *See generally Matter of Smith*, 906 F.2d 1527, 1540 (7th Cir. 1992) (dissenting opinion exploring concepts of ownership and control). When the Debtor left the Bank literally "cash-in-hand" without the Bank placing any restrictions on the use of the funds, the Debtor "had both components of control, namely power over designation and disposition." *Id.* As the court found at trial, Debtor exercised the power of control by depositing the funds in the Doral account in order to operate. Consequently, because we conclude that the funds belong to the Debtor, "we have effectively rebuffed the [Bank's] earmarking arguments." *In re Reale*, 393 B.R. 821, 827 (1st Cir. B.A.P. 2008). We shall explain.

In a classic "earmarking" situation, an old creditor is substituted for a new creditor that lends or advances funds to the debtor on the specific condition that said funds shall be used to pay off the old creditor.[10] "In such circumstances, the debtor functions as a "mere conduit" and exercises no control over the funds' disposition." *Id.* (quotations original) (citations omitted). Such a transaction merely replaces one creditor for another without any effect on distributions to other creditors. The debtor never becomes the owner of the funds which are momentarily placed in its hands (the debtor acts as a kind of bailee). Also, it is axiomatic that an earmarking

---

[9] Thus, when the court stated in the Order that the "crux of the matter is whether these funds ever belonged to Mr. Net" (Dkt. 21 at 7:17-18), the answer is, yes they did. In that regard, the Bank's "earmarking" defense, discussed, *infra*, fails as a matter of law.

[10] Earmarking is most often explained in the context of guarantors of debtors transferring or advancing funds for the benefit of old creditors, but application of the doctrine is not limited to this context. *Id.*

- 13 -

transaction is valid only if the debtor's estate is not depleted by the transfer. *See, generally*, 5 Collier on Bankruptcy ¶ 547.03[2] at 547-21-29 (15th ed. rev. 2008) (collecting earmarking cases). "Under the earmarking approach, courts view the funds as transferred [from one creditor to another] through, *but not by*, the debtor." *In re Lazarus*, 478 F.3d 12, 15 & n. 3 (1st Cir. 2007) (emphasis original). This approach "leaves the estate no worse off that it would have been if the [new creditor] had advanced nothing to the debtor but paid off the debt directly." *Id.*

Here, there is no evidence to support the existence of an earmarking "arrangement between third parties", the Bank and the purchaser of the Debtor's house, to substitute one creditor for another "with no property transfer *by* the debtor". *Id.* (emphasis original). Furthermore, the Bank has not and cannot argue that it had an "arrangement" with Code Inspectors to earmark the funds in the account for the benefit of the Bank. More importantly, the attachment leaves the Debtor's estate considerably worse off than when the Debtor controlled the funds in the account. Therefore, the earmarking defense does not provide the Bank with an escape from the plain language of section 547(b). *Id.* at 16.

*Conclusion*

The Bank granted the Debtor complete and unfettered control over the check containing the funds at the conclusion of the transaction for the sale of the Debtor's house. There is no evidence in the record that the Debtor lost control over the funds or ceded to another entity the power to designate payees and dispose of the funds. The testimony suggests that Code Inspectors is a dormant or non-operational paper company, and Debtor did not receive anything in exchange for the deposit in the account under Code Inspector's name. The evidence on record shows that Debtor did not deposit the funds in the Doral account for the purpose of lending money to the company, or investing in it or otherwise ceding control of the funds to the company. Therefore,

- 14 -

the deposit did not give Code Inspectors a property interest in the funds.  On the other hand, the Bank did not offer any evidence to show that the funds were "earmarked", that they don't belong to the Debtor or that the Debtor lost control of the funds at any time. In fact, the record shows that the Bank attached the funds in the sincere belief that the funds belonged to Debtor.

Based on the foregoing analysis, it becomes clear that the Debtor intended to treat the Doral account as a personal "piggy bank" to keep his money, without any intention of investing or loaning the funds to the company or of going into business with that company. The Debtor had dominion and control over the funds and could dispose of the funds as he wished, therefore he is the rightful owner of the funds. The Bank is a creditor with pre-petition claims against Debtor. The attachment was a transfer of Debtor's property made for the benefit of the Bank on account of antecedent debt while the Debtor was insolvent and within 90 days of the filing of the petition. The attachment had the effect of depleting the Debtor's bankruptcy estate and will allow the Bank to receive more than it would in a liquidation. Therefore, as a matter of law, the attachment constitutes a preference in favor of the Bank that should be avoided and the funds returned to the Debtor's bankruptcy estate for a distribution to creditors in accordance with the Code.

For all the foregoing reasons, after hearing the evidence adduced and the argument of counsel and considering them, this court finds for the Trustee in its preference claim against Banco Bilbao Vizcaya Argentaria de Puerto Rico.

SO ORDERED.

In San Juan, Puerto Rico, this 24th day of October, 2008.

ENRIQUE S. LAMOUTTE
U. S. Bankruptcy Judge

- 15 -